IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


TILLIE RUTH STEEPLES,

    Petitioner,

vs.                                              Case No. 4:07cv384-MP/WCS

PAIGE AUGUSTINE,

    Respondent.

_____/


## REPORT AND RECOMMENDATION TO DISMISS § 2241 PETITION

    This cause is before the court on a 28 U.S.C. § 2241 petition for writ of habeas corpus. Doc. 1. Pursuant to court order, doc. 3, Petitioner paid the filing fee. Doc. 4. Petitioner also filed a petition to add exhibits, doc. 5, which is granted by separate order. References to Exs. 1-4 are to those attached to doc. 1, and references to Exs. 5-9 are to those attached to doc. 5.

    Claims are not specifically set forth on the § 2241 form, but in the incorporated "motion for credit for time under home detention," hereafter referenced as § 2241 memo. Normally the court would require amendment, as this is improper. Local Rule 5.1(J)(2) and (3) (pro se petition must be filed on a form, and "must set forth specific

claims and supporting facts and may not make reference to a memorandum."). Amendment to comply with the rule is not necessary however, as it plainly appears that Petitioner is not entitled to any relief in this court. § 2254 Rule 4 (authorizing summary dismissal if it plainly appears from the petition and any attachments that the petitioner is not entitled to any relief); § 2254 Rule 1(b) (authorizing application of the § 2254 Rules to § 2241 petitions).

The dates relevant to the petition are provided in a letter from Petitioner to the Bureau of Prisons (BOP) dated July 31, 2007. Ex. 4. She was arrested and transported to the Metropolitan Community Center (MCC) in New York on November 13, 2002. *Id.*, p. 1. She entered a guilty plea on September 18, 2003. *Id.* She was sexually assaulted on May 22, 2003,[1] but remained at MCC until July 28, 2004, when the court ordered her "to wait on house arrest until the Supreme Court ruled on the Blakely case for sentencing." *Id.* She was sentenced on September 8, 2005, and remained under house arrest until her self-surrender to the BOP on January 3, 2006. *Id.*

In support of her petition, Petitioner claims that she was sentenced on September 8, 2005, the court was "very interested in granting a split sentence," and the prosecutor indicated it would be split in a sense because Petitioner would receive credit for time previously served. § 2241 memo, p. 2. Petitioner claims that she spent 17 months in home detention after her conviction, three months of which was after her

---

[1] According to a letter from Petitioner's lawyer dated June 2, 2003, after Petitioner refused to submit to a gynecological pelvic exam, she was forcibly examined while being held down by several institutional employees. Ex. 9, p. 2.

sentencing. *Id.* For relief, Petitioner seeks "credit for the 17 months of Post Conviction and some Post Sentencing time that the Petitioner served under house arrest." Doc. 1, p. 7.

Petitioner contends that the 17 months of house arrest constituted time "spent in official detention" before the sentence commenced, for which she is entitled to credit under 18 U.S.C. § 3582(b). *Id.*, p. 4. Petitioner was confined to within 25 feet of her daughter's apartment when her daughter was there (and to her bedroom when her daughter was not there), wore an electronic ankle bracelet and was subject to constant surveillance, was subject to surprise phone calls and unnannounced visits, and had to get a court order to leave New York. *Id.*, pp. 4, 7; Ex. 1 (inmate grievance). She claims that these restrictive conditions amounted to official detention.

This argument is squarely foreclosed by Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). There the prisoner had been released on bail, to the custody of pretrial services, with the condition that he be confined to a community treatment center which he could not leave unless accompanied by a Government agent. *Id.*, at 52-53, 115 S.Ct. at 2023. He had been "released" subject to conditions, rather than committed to the custody of the Attorney General without bail, the two options under the Bail Reform Act. *Id.*, at 57-58, 115 S.Ct. at 2025, citing 18 U.S.C. §§ 3142(c), (e), and (i) (other citations omitted). The Court found that "credit for time spent in 'official detention' under § 3585(b) is available only to those defendants who were detained in a 'penal or correctional facility,' § 3621(b), *and* who were subject to BOP's control." *Id.*, at 58, 115 S.Ct. at 2026 (emphasis added). "Unlike defendants 'released' on bail, defendants who are 'detained' or 'sentenced' *always remain subject to the*

*control of the Bureau.* This is an important distinction, as the identity of the custodian has both legal and practical significance." *Id.*, at 63, 115 S.Ct. at 2028 (emphasis in original, citation omitted). *See also* Rodriguez v. Lamer, 60 F.3d 745, 747 (11th Cir. 1995) (quoting Koray).

In Rodriguez the court addressed the argument that denying credit to persons "released" to home confinement, while granting credit to those serving a period of home confinement pursuant to U.S.S.G. § 5C1.1, violated equal protection. *Id.*, at 748. The equal protection issue was not decided in Koray, as it had been waived. 515 U.S. at 55, n. 2, 115 S.Ct. at 2024, n. 2. The Eleventh Circuit found no violation of equal protection because they were not similarly situated: those receiving credit "have been convicted, sentenced, and placed in the custody of the BOP prior to their subjection to home confinement," whereas the prisoner there was not in BOP custody during his home confinement. 60 F.3d at 749. The difference in legal status is dispositive. *Id.*, *citing* Dawson v. Scott, 50 F.3d 884, 895 (11th Cir. 1995) (other citations omitted).

Petitioner attempts to distinguish Rodriguez, claiming that "[u]nlike Mr. Rodriguez, Ms. Steeples had already been in custody for 22 months and was convicted and awaiting sentencing then later convicted and sentenced during the entire 17 months of home detention." Ex. 8. But Petitioner was not in BOP custody after her release from the MCC to home confinement. This is the critical distinction under Koray and Rodriguez. Koray, 515 U.S. at 6264, 115 S.Ct. at 2027-28; Rodriguez, 748-749.[2]

---

[2] All the relevant dates are not provided in the Rodriguez opinion, but in Koray the prisoner entered a plea on June 18, 1991, was "released" on June 25, 1991, to pretrial services (with condition of confinement to the community center), was sentenced on October 22, 1991, and reported to a federal prison camp for service of his

Petitioner notes the split sentence discussed at sentencing, and cites cases for the proposition that a departure from the Sentencing Guidelines may be warranted in light of time spent in home detention. § 2241 memo, pp. 2, 5-6. It is noted that Petitioner was sentenced after Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) and United States v. Booker, 543 U.S. 200, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),[3] apparently by design. See Ex. 9 (Petitioner's statement titled "reason for home detention") ("Court did not want to sentence Steeples until the Blakely case was decided and did not want Steeples to remain in custody at MCC NY."). Under Booker, the court must still determine the appropriate sentencing guidelines range but the range is advisory rather than mandatory (as was the case prior to Booker). See, e.g., United States v. Livesay, 484 F.3d 1324, 1329 (11th Cir. 2007) (citations omitted). "After correctly calculating the advisory guidelines range, the district court may then consider imposing a more severe or more lenient sentence, which [the Eleventh Circuit] reviews for reasonableness in light of the factors in 18 U.S.C. § 3553(a)." Id. (citations omitted). See also Ex. 2 (attached sentencing transcript),[4] p. 13

---

sentence on November 25, 1991. 515 U.S. at 52-53, 115 S.Ct. at 2023. So, like here, the confinement at issue continued after the plea and after sentencing.

[3] Before Petitioner's arrest or plea the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000) (citation omitted). In Blakely (decided June 24, 2004, shortly *before* Petitioner's release from MCC), the Court applied Apprendi to a sentence enhanced under state sentencing guidelines; in Booker (decided January 12, 2005), the Court applied Apprendi and Blakely to the Federal Sentencing Guidelines.

[4] The court references the pages of the transcript; there are four pages of transcript on each page. For example, the first page of the exhibit is a cover page, and

(agreeing that guidelines were only advisory but they had to start with the accurate range).

At sentencing, the court reduced Petitioner's criminal history from category II to category I, and reduced the offense level from 31 to 27. *Id.*, pp. 24-27. This yielded a guidelines range of 70-87 months, and the court set the sentence for 70 months. *Id.*, p. 27. There was discussion regarding the possibility of a split sentence under Booker, but the court agreed that even if it had the discretion to split the sentence, it exercised the discretion not to do so and to stick with the 70 month sentence it had already deemed appropriate. *Id.*, pp. 30-37.[5] Regardless, none of the court's sentencing determinations – whether to split the sentence, or grant departures – is properly raised here. *See* 28 U.S.C. § 2255 (providing a post conviction remedy in the sentencing court, further providing that persons authorized to seek § 2255 relief may not seek habeas corpus relief unless the § 2255 remedy is inadequate or ineffective).

It was also noted a number of times at Petitioner's sentencing that she would be granted credit for the 22 months served at MCC. *Id.*, pp. 36-38. Petitioner does not

---

the second contains pp. 1-4 of the transcript. Ex. 2, pp. 1 and 2.

[5] As noted by the prosecution, Petitioner would not have been entitled to a split sentence under the guidelines because the sentencing range placed her in Zone D of the sentencing table. *Id.*, pp. 31-32. Under the guidelines, the minimum terms of the guidelines range of imprisonment for Zone B or C sentences may include a term of supervised release with a condition that substitutes community confinement or home detention, as long as at least a month (For Zone B) or half the minimum term (for Zone C) is satisfied by imprisonment. U.S.S.G. § 5C1.1(c) and (d). In Livesay, the district court had granted a downward departure of 18 levels (pursuant to U.S.S.G. § 5K1.1) to bring the sentence within Zone B, so the court could impose probation and 6 months of home detention, which had already been served. 484 F.3d at 1328-29. The court found the departure patently unreasonable in that case, and found the ultimate sentence unreasonable under Booker and § 3553(a). *Id.*, pp. 1330-34.

Case No. 4:07cv384-MP/WCS

claim here that she has not received sentence credit for the time spent at MCC, and it appears that she received sentence credit for this period. Ex. 1, p. 3 (response to request for administrative remedy, noting that Petitioner was "granted prior custody credits of 624 days from November 13, 2002, through July 28, 2004.").

It if therefore respectfully **RECOMMENDED** that the 28 U.S.C. § 2241 petition for writ of habeas corpus, seeking credit pursuant to 18 U.S.C. § 3585(b), be **SUMMARILY DISMISSED** as it plainly appears that Petitioner is not entitled to relief.

**IN CHAMBERS** at Tallahassee, Florida, on December 10, 2007.

        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**